In the Matter of SAVOY ASSOCIATES, INC., Petitioner, against LEWIS J. VALENTINE, as Commissioner of the Police Department of the City of New York, Respondent.

First Department, April 20, 1943.

*Louis B. Stillman* of counsel (*David B. Stillman* and *Victor Lehman* with him on the brief; *Stillman & Stillman,* attorneys), for petitioner.

*Charles C. Weinstein* of counsel (*Bernard Friedlander* with him on the brief; *Thomas D. Thacher, Corporation Counsel,* attorney), for respondent.

MARTIN, P. J. The police commissioner has revoked a public dance hall license issued to the petitioner.

Section 436-1.0, subd. f, of the Administrative Code of the City of New York reads as follows: " f. Revocation of license.— A license may be revoked by the commissioner for any violation of law or upon the ground that disorderly, obscene or immoral conduct is permitted on the licensed premises. The commissioner shall cause to be served upon such parties as he may deem to be interested therein such reasonable notice of his intention to revoke such license as he may determine to be proper. There shall be included in or attached to such notice a statement of the facts constituting the violation charged. Licensees shall be entitled to a hearing before the commissioner. If the license of any place be twice revoked within a period of one year, a new license shall be denied to such place for a period of at least one year from the date of the second revocation."

Petitioner was notified to show cause why its license should not be revoked for the following reason: " On March 1, 1943,

did fail to have name of male attendant, Lee Edwards of 65 West 140th Street, New York City in book containing names and addresses of employees. On said date did permit or allow said male attendant, Lee Edwards to aid and abet one Alfred Johnson in procuring three prostitutes for a male patron.''

At petitioner's request, the hearing was adjourned from March 10 to March 18, 1943. On the latter date, the petitioner was represented by its manager and secretary who cross-examined witnesses and testified in petitioner's behalf. At that hearing, a police officer testified that on March 1, 1943, at about ten-forty P. M., he entered the men's room of the dance hall and thereafter engaged in a conversation with one Lee Edwards, the male attendant there. The said Edwards offered to introduce him to a man who would get him some girls. He thereupon gave the attendant one dollar and fifty cents and Edwards introduced him to a man named Alfred Johnson who brought the officer over to a table and introduced him to four negro women. A discussion then ensued regarding the charges for the women and it was agreed that the officer pay Johnson ten dollars for the services of two of the women, it being understood that a third would accompany these two so as to make a certain flat accessible to the officer and the other two women. According to the officer, Johnson said: ''* * * do you know how we work it, you go down first and get a cab and the girls will be right down after you.''

The officer gave Johnson two five dollar bills but Johnson asked for singles whereupon the officer gave him ten one dollar bills which had been marked. It was also understood between Johnson and the officer that the latter, after having brought the colored women to the rendezvous in the taxicab, was to return to the dance hall with them and give them the sum necessary to pay the charges for their re-admission. The officer then left the ball room unaccompanied and shortly thereafter met the three women on the street and all four proceeded in a taxicab to an apartment at 14 West One Hundred and Twenty-seventh street, where the women offered to commit acts of prostitution and were placed under arrest.

The officer returned to petitioner's premises, met Johnson and in response to the latter's inquiry as to where the girls were, the officer represented that they were downstairs in the bar and grill; Johnson inquired when the officer would be down again and, when the officer indicated a night when he would have five or six fellows with him, Johnson said he would have six or seven girls and, further, Johnson said: ''* * * when

you come down do not let anyone else get hold of you here, I treated you right and no one robbed you and you had a good time and I do not want anyone else to have you here."

Johnson then accompanied the officer ostensibly to join the girls for a drink and Johnson was then placed under arrest. At the same time, Edwards was arrested. When arraigned in court, Edwards and Johnson pleaded guilty, as did the women.

At the hearing on March 18, 1943, Lt. Col. Edward H. Marsh testified that since April, 1942, he had received 142 individual records of servicemen who contracted venereal diseases from women whom they claimed they had met at petitioner's dance hall.

Lt. Comm. B. L. Toothaker of the United States Navy testified that it was reported to him, as Venereal Disease Control Officer, that twelve servicemen contracted venereal diseases from women whom they claimed they had met at petitioner's premises.

Dr. Herman Goodman of the Health Department of the City of New York testified that since June, 1942, the sources of venereal diseases contracted by 164 men of the armed service were women claimed to have been met at petitioner's dance hall.

Inspection of the records of petitioner on the night of the arrests revealed that the name " Lee Edwards " did not appear upon any of the lists of employees although the name " Lee " was written in pencil upon a payroll book. A complete list of petitioner's employees is required to be kept in the station house pursuant to police regulations. Examination of this roster disclosed that the name " Lee Edwards " did not appear on it.

It is now contended that petitioner did not permit the alleged disorderly and immoral conduct complained of and that there is no proof of petitioner's connection therewith. Personal knowledge of the conduct complained of is not essential. (Matter of Cullinan [Niederstein Cert.] 88 App. Div. 6.) It is sufficient if the circumstances are such that the licensee is reasonably chargeable with failure to prevent such occurrence. The record of this particular dance hall as disclosed on the proceedings before the respondent is such that petitioner must have known of the conditions existing. In May, 1942, one Willie Jones, a frequenter of petitioner's ball room, met a female minor in the ball room and placed her in a house of prostitution. Jones was subsequently arrested on charges of compulsory prostitution growing out of this incident and in June, 1942, pleaded

guilty to a charge of conspiracy to commit the crime and received a penitentiary sentence. In May, 1942, a police officer visiting the premises was solicited for purposes of prostitution in the men's lavatory by one Ernest Walker, a well-known patron of petitioner's dance hall; Walker was arrested and convicted. In July, 1942, petitioner's manager and secretary and two of its employees were charged with violating section 484 of the Penal Law which prohibits the admission of minors under the age of sixteen years to public dance halls. A hearing was had before the Division of Licenses of the Police Department in July, 1942, at which petitioner's manager and secretary was fully informed of the fact that men, engaged in procuring for the purpose of prostitution, were operating without apparent restraint in petitioner's premises. In September, 1942, the petitioner was admonished concerning minors visiting the premises. Again in October, 1942, petitioner was fully informed of complaints received by the police department regarding immoral activities in and originating from the petitioner's ball room with emphasis on the activities of prostitutes in and about the petitioner's premises.

Sufficient is shown to establish that the happenings of March 1, 1943, were not isolated and unusual but were a common characteristic of conditions of which petitioner had full knowledge and from which it may be implied that petitioner permitted Edwards and Johnson to carry on their nefarious business.

It is urged that the reception of the testimony of Lt. Col. Marsh, Lt. Comm. Toothaker and Dr. Goodman was inflammatory, scandalous and prejudicial and in no wise related to the charges or issues thereof preferred against petitioner. It may be noted that no objection to the testimony was offered by the petitioner. The Administrative Code does not indicate that the hearing before the police commissioner shall be limited to sworn testimony and competent evidence. There is applicable what was said in *Matter of Heaney* v. *McGoldrick* (286 N. Y. 38): '' When the Legislature confers upon an administrative officer or board authority to act in a judicial capacity and, after investigation, to determine questions which may properly be submitted to administrative rather than judicial officers, and does not at the same time direct the manner in which the investigation of such questions shall be conducted, the form of the investigation depends upon the nature of the question to be determined, and the kind of data upon which such a determination can be based reasonably and fairly. Always,

however, each party to the proceedings, who will be directly affected by the determination, must be accorded fair play; and fair play may require an opportunity for presentation of his side of the question. * * *."

In that case it was pointed out that information gathered by investigators and reported to the administrative officer may form the basis of the latter's determination, but the petitioner should be apprised of the facts disclosed and granted an opportunity to test by cross-examination the basis of conclusions contained in the memorandum and report and to offer evidence which might affect the validity of the conclusions. In the case at bar, the petitioner was afforded ample opportunity to cross-examine the officers whose testimony is now complained of and to meet the same in any manner deemed proper.

The statute has placed upon the operators of public dance halls full responsibility for the prevention of disorderly and immoral conduct upon such premises. The record of occurrences on March 1, 1943, at petitioner's premises demonstrates that they occurred as the result of neglect, delinquency and inaction on the part of the petitioner.

With the object of preventing public dance halls from becoming a source of crime, vice and immorality, the police department, by subdivision " (f) " of the Public Dance Hall Regulations, requires that there be maintained an accurate record of names and addresses of all employees. To be helpful, this record must be kept up to date and the regulation requires that changes shall be promptly reported. Petitioner failed to observe this regulation in that the name " Lee Edwards " does not appear upon its office records or upon the duplicate required to be furnished to the commanding officer of the police precinct. Petitioner claims that this employee was listed on its books under the name of " Lee " instead of " Edwards " because that was the name by which he was known. It is significant that the name of the particular employee who initiated the events of March 1, 1943, did not appear upon the petitioner's records and may be regarded as evidence of petitioner's delinquency in the management of its dance hall. Petitioner's violation of regulation " f " constitutes a sufficient basis in and of itself for the revocation of its license.

There is no requirement that the police commissioner make formal findings and the absence thereof in no way affects his determination. Petitioner was fully informed that it was specifically charged with having permitted the explicitly described disorderly and immoral conduct on its premises and with having

violated the requirement of the police department that a complete roster of employees be maintained. The evidence sustains the finding of guilt.

The determination of the police commissioner should be confirmed, with fifty dollars costs and disbursements to the respondent.

UNTERMYER, J. (concurring in the result only). With considerable hesitation, I concur in the confirmation of the determination of the police commissioner.

As to the first charge, even if it were sustained by the proof, it is sufficient to say that no evidence was offered of the police regulation which the petitioner is claimed to have violated, nor in my opinion may we take judicial notice of such regulations.

As to the second and more serious charge, no competent evidence was offered that the single incident complained of occurred with the permission, express or implied, of the licensee (Administrative Code of the City of New York, § 436-1.0, subd. f; L. 1937, ch. 929) or any person connected with the management.

The evidence of implied permission is said to consist of testimony of representatives of the army, the navy and the Department of Health, none of whom, however, professed to have any knowledge of the facts except that they had received reports from subordinates of complaints relating to the operation of the licensed premises. It is said also to consist of statements made by Lee Edwards and Alfred Johnson indicating that Johnson was commonly on the premises. These statements, even if they may be said to warrant such an inference, were not made in the presence of any person connected with the management and, therefore, are not binding on the petitioner. The allegations of the answer denied by the reply may not, for obvious reasons, be regarded as evidence in this proceeding.

For these reasons, I would dissent and vote to annul the determination were it not that all the incompetent evidence was received without objection and might, therefore, be considered by the commissioner. For that reason only, I vote to confirm the determination.

DORE, COHN and CALLAHAN, JJ., concur with MARTIN, P. J.; UNTERMYER, J., concurs in the result only, in opinion.

Determination unanimously confirmed, with fifty dollars costs and disbursements to the respondent and the stay vacated.